*335 O’CONNOR, Justice,
dissenting.
I dissent.
This case involved an automobile accident that occurred on March 24, 1989, at the intersection of the private road exit from Pin Oak Mobile Home Park onto the county roadway known as Airline Drive in Houston, Texas. One of the automobiles involved in the accident was driven by Belinda Demny Ruyle, who was heading south on Airline Drive, and the other was driven by Fidelia Munoz, who was leaving the trailer park. Plaintiff, Robyn Demny, was a passenger in the back seat of the Ruyle’s vehicle. Plaintiff is the sister-in-law of Ruyle.
Before the accident, Harris County spent three years upgrading and widening Airline Drive. The project involved replacing the two-lane road and ditches with a five-lane road with concrete curbs, gutters, and storm sewers. The upgrade also included replacing the bridge over Halls Bayou. Halls Bayou is adjacent to the Pin Oak Mobile Home Park. In later 1988, after the new bridge was in place, the manager of the mobile home park complained to Harris County about the head-wall located at the south end of the bridge, adjacent to the mobile home driveway. She said the headwall blocked the view of drivers leaving the mobile home park onto Airline Drive. Harris County responded by correcting the situation in January 1989, by modifying the headwall by cutting it down. Harris County claims that after the modification of the headwall, there were no more complaints. Harris County introduced evidence at trial that the construction of the bridge and roadway, with respect to sight distance requirements, was in compliance with the construction standards for the State of Texas, which required a minimum of 200 feet. The plaintiff contends there were complaints after the modification. The plaintiff introduced evidence by an expert that the condition was extra hazardous.
The plaintiff testified that immediately before impact, she saw Munoz’s car and screamed “Belinda [Ruyle].” The plaintiff did not know if Ruyle actually applied her brakes before the impact. Ruyle testified there was only one lane open for traffic on Airline because it was still under construction. She said she was driving between 30 and 35 m.p.h., which was the speed limit. She testified she did not see anyone on the driveway of the trailer park, that the green car (Munoz’s) suddenly appeared in front of her. When asked if her view was blocked by the railing, she said, “[I]t could have been.” Ruyle, who lived close by, admitted she had driven past the trailer park many times.
The officer who arrived at the scene and investigated the accident testified the cause of the accident was Munoz’s failure to yield the right of way, and the view from the driveway was not obstructed. He said cars can leave the trailer park safely. The county called a consultant who testified that after the accident he measured the sight distance on Airline by placing cones at intervals of 100 feet down Airline. He testified that sitting in the driveway, as Munoz had been just before the accident, he could see down Airline beyond the cone located at 400 feet. He testified that neither the bridge nor the sight distance played any role in the accident.
Error in the Charge
I agree with the County that it was entitled to the following definition:
Negligence by Harris County ... is the failure to use ordinary care to make reasonably safe or adequately warn of a dangerous condition which Harris County ... created or had actual knowledge of.
The majority states that the County’s liability was not premised on the general definition of negligence. I agree with the majority that it should not have been, but I think on this submission it was. The jury question regarding the County’s liability did not dispel the notion that the definition of negligence in the instruction governed the County’s liability-
I also agree with the County that it was entitled to the definition of dangerous condition. In the instructions, the trial court included the following:
You are instructed that Harris County cannot be found negligent for design defects or for the failure to include safety features in the design of a roadway even *336 though the design may be a “dangerous condition.”
The County asked the trial court to include a definition of “dangerous condition.” The County wanted a definition that explained that a “dangerous condition” is a condition that poses an unreasonable risk of harm to a user of the roadway. The issue whether the condition was dangerous was one of the most disputed issues in this trial. The definition should have been included.
Finally, I agree with the County that a question should have been submitted regarding the actual knowledge of the user of the highway, not the plaintiff who was sitting in the back seat of the automobile. The plaintiff actually saw the Munoz’s car on the road before Ruyle, the driver. Ruyle testified that she did not have time to apply the brakes before impact.
The charge, which is reproduced in the majority’s opinion, is from 3 State Bar of Texas, Texas PatteRN Juey Charges PJC 66.05 (1990). The suggested charge in section 66.05 has four elements, whether: (1) the condition posed an unreasonable risk of harm; (2) the County had actual knowledge of the danger; (3) the plaintiff had actual knowledge of the danger; and (4) if the County failed to adequately warn the plaintiff or make the condition reasonably safe.
This case is somewhat different than the usual licensee case because the plaintiff was not driving, she was merely a passenger. Yet even as the passenger she was more alert to the conditions on the roadway than the driver; she saw the green car before Ruyle.
As submitted in this case, with the passenger’s name listed as the plaintiff, the charge only had two elements, whether: (1) the condition posed an unreasonable risk of harm; (2) the County had actual knowledge of the danger. By using the plaintiff’s name in the third and fourth element (instead of using the phrase requested by the County, the “user”), the jury could assume the plaintiff, who was a passenger in the back seat of the car, had no actual knowledge of the danger until she screamed at Ruyle to stop (element 3), and that the County did not warn her in the back seat of the car about the condition of the roadway (element 4). By focusing on the conduct of the plaintiff instead of Ruyle, in relationship to the County’s negligence, the question unfairly tilted the question against the County.
The majority overrules this point, adding that the record contains no evidence that either the driver or the plaintiff knew about the dangerous condition. The majority overlooks certain presumptions we use in such cases. First, we impute to a licensee (in this case, the driver, not the back seat passenger) the knowledge of those conditions perceptible to her, or the existence of which can be inferred from the facts within her present or past knowledge. See Lower Neches Valley Auth. v. Murphy, 586 S.W.2d 561, 564 (Tex.1976); Weaver v. KFC Management, Inc., 750 S.W.2d 24, 26-27 (Tex.App.—Dallas 1988, writ denied) (if the hazard was perceptible, the licensor does not have the duty to warn). Second, we charge the licensee (the driver) with knowledge of all dangers that should have been discoverable by the exercise of reasonable care. See Hadaway v. Lone Star Gas Co., 355 S.W.2d 590, 592 (Tex.App.—Fort Worth 1962, orig. proceeding). With these two assumptions in place, I believe the evidence raised the issue regarding the licensee’s knowledge. If the jury had been charged to examine the knowledge and conduct of the driver, not the plaintiff (passenger), the jury might have found that she knew that the private driveway intersected with Airline Drive and that it posed a risk.
I would reverse for a new trial.